DeALMEIDA, J.T.C.
These matters require the court to reconcile the Appellate Division’s opinion in Alfred Conhagen, Inc. v. Borough of South Plainfield, 16 N.J.Tax 470 (App.Div.), certif. denied, 151 N.J. 74, 697 A.2d 546 (1997), with its recent decision in H.J. Bailey Co. v. Township of Neptune, 399 N.J.Super. 381, 944 A.2d 706 (App.Div. 2008). Both opinions concern N.J.S.A. 54:4-34, commonly known as Chapter 91 by virtue of its adoption as L. 1979, c. 91, and the application of that statute’s sanction limiting a taxpayer’s right to appeal a tax assessment for failure to respond to a tax assessor’s inquiry for income and expense information, as modified in Ocean Pines, Ltd. v. Borough of Point Pleasant, 112 N.J. 1, 547 A.2d 691 (1988). In Conhagen, su'p?u, the court held that Chapter 91’s appeal-preclusion provision applied when a taxpayer failed to respond to an assessor’s request for information, even though the subject property was not producing income at the time of the request. The court in H.J. Bailey, stvpra, however, held that non-income-producing property is not subject to Chapter 91’s appeal limitation provision, even if the assessor’s request for income and *360 expense information pursuant to the statute went unanswered by the taxpayer.
For the reasons explained more fully below, the court concludes ■ that despite plaintiffs’ claim that the opinions in Conhagen, supra, and H.J. Bailey, supra, establish conflicting standards for resolution of Chapter 91 motions involving non-income-producing properties, the two precedents involve distinct circumstances warranting differing outcomes. The facts of the present matters resemble those before the Appellate Division in Conhagen, supra, requiring this court to grant defendant’s motions to dismiss, subject to the taxpayers’ right to request reasonableness hearings in accordance with Ocean Pines, supra.
I. Findings of Fact
The facts are simple and not in dispute. These matters concern multi-unit apartment buildings in East Orange, Essex County, owned by related parties. Plaintiff Thirty Mazel, LLC owns the apartment building at 30 Lenox Avenue. That property is designated by the city as block 383, lot 2. Plaintiff Lenox Avenue Associates, LLC owns the apartment buildings at 40 Lenox Avenue and 50 Lenox Avenue. Those properties are designated by the city as block 383, lot 43 and block 383, lot 41, respectively.
All three properties produced rental income for many years prior to 2006. The properties were long known to the East Orange tax assessor as income producing and were so categorized in her records. In 2006, the property owners undertook major renovations of the apartment buildings. As a result, no tenants resided in the properties during 2006 and plaintiffs realized no rental income from the buildings in that year. The work permits issued to plaintiffs by the city suggested that only minor improvements would take place and plaintiffs do not contend that city officials were on notice that the buildings would be vacant for all of 2006. Tenants have since returned to the properties and plaintiffs are again collecting rental income from all three buildings.
On or about August 15, 2007, the East Orange tax assessor, as is her customary practice for all income-producing properties, *361 mailed to plaintiffs, via certified mail, return receipt requested and regular mail, requests for income and expense information relating to the subject properties pursuant to Chapter 91. Each request included an “Annual Statement of Income and Expenses for Apartment Properties” to be completed by the taxpayers detailing rental income and expenses for the calendar year ending December 31, 2006. The assessor’s intent was to use that information to determine the assessment for each property for tax year 2008.
There is no dispute that the August 15, 2007 letters satisfied the requirements of Chapter 91. Nor do plaintiffs deny having received the assessor’s requests for information. The assessor did not receive a response to her requests with respect to any of the subject properties. She thereafter set an assessed value for each property for tax year 2008 using whatever information was available to her at the time, as authorized by Chapter 91.
 On February 29, 2008, plaintiffs filed Complaints with this court challenging the assessments. On August 14, 2008, the city moved to dismiss the Complaints pursuant to Chapter 91, alleging that plaintiffs’ failure to respond to the assessor’s information requests warrant dismissal of the appeals, subject to the availability of Ocean Pines reasonableness hearings. Plaintiffs opposed the motions, arguing that because the properties did not produce income during 2006, the period covered by the assessor’s requests, Chapter 91’s appeal-preclusion provision does not apply. In support of their position, plaintiffs rely on the recent decision in H.J. Bailey, swpra, which plaintiffs contend sets a clear rule that Chapter 91’s appeal limitation remedy is inapplicable to non-income-producing property, the prior holding in Conhagen, mpru, notwithstanding. The court consolidates the motions for purposes of this opinion.
II. Conclusions of Law
N.J.S.A. 54:4-34 provides
Every owner of real property of the taxing district shall, on written request of the assessor, made by certified mail, render a full and true account of his name and real property and the income therefrom, in the case of income-producing property and if he shall fail or refuse to respond to the written request of the assessor *362 within 45 days of such request ... the assessor shall value his property at such amount as he may, from any information in his possession or available to him, reasonably determine to be the full and fair value thereof. No appeal shall be heard from the assessor’s valuation and assessment with respect to income-producing property where the owner has failed or refused to respond to such written request for information within 45 days of such request____In malting such written request for information pursuant to this section the assessor shall enclose therewith a copy of this section.
The statute imposes three “strict obligations” on the assessor: “(1) the letter must include a copy of the text of the statute; (2) it must be sent by certified mail to the owner of the property; and (3) it must spell out the consequences of failure to comply with the assessor’s demand, namely a bar to the taxpayer’s taking of an appeal from its assessment.” Southland Corp. v. Township of Dover, 21 N.J.Tax 573, 578 (Tax 2004). “The government must speak in clear and unequivocal language where the consequence of non-compliance [with a Chapter 91 request] is the loss of the right to appeal assessments.” Cassini v. City of Orange, 16 N.J.Tax 438, 453 (Tax 1997). In addition, “[t]o advance the purpose of N.J.S.A. 54:4-34, the assessor’s request must be timely, so that upon its receipt, the assessor can utilize the information by January 10” in setting an assessment for the upcoming tax year. John Hancock Mut. Life Ins. Co. v. Township of Wayne, 13 N.J.Tax 417, 422 (Tax 1993). As noted above, plaintiffs do not dispute that defendant has fulfilled these requirements and the court concludes that the information requests made by the assessor fully complied with Chapter 91.
The sole question before the court is whether plaintiffs’ appeals are subject to dismissal, given that their properties were vacant and produced no income during 2006. In Conhagen, supra, the Appellate Division was presented with facts similar to those before this court. There, for the three years prior to May 1994, the taxpayer owned and occupied an industrial building with adjoining-land. 16 N.J.Tax at 472. During that period, the taxpayer leased a portion of the land to another company for the storage of vehicles. Ibid. Although the building was owner occupied, the lease of the land “rendered the pi’operty ‘income-producing property.’ ” Ibid. This use was known to the assessor. Ibid. In May *363 1994, the lease terminated and plaintiff ceased to derive rental income from the property.
In July 1995, the assessor sent a request for income and expense information to the taxpayer. Ibid. The property owner failed to respond to the request, believing that because the property was owner occupied and non-income-producing at the time of the request, no response was necessary. Id. at 471. On motion of defendant, this court dismissed the appeal, subject to plaintiffs right to request an Ocean Pines reasonableness hearing. The Appellate Division affirmed.
The appellate court held that in the absence of “a specific mechanism to be utilized by a taxpayer to modify the records of the tax assessor when formerly income-producing property is no longer utilized for an income-producing purpose!,]” the property owner is obliged to respond to a Chapter 91 request to inform the assessor that income was no longer being derived from the property. Id. at 473. As the court explained, a “clear reading of the statute makes it incumbent upon a taxpayer, who receives notice, to respond to the tax assessor. A response that identifies the ‘full and true account of his name and real property and the income therefrom’ appears mandatory.” Ibid. The court continued,
[wjhere the property has not produced income, the taxpayer is obliged to report that fact to the tax assessor. The failure to produce income may be explained by the temporary loss of a tenant, the presence of a tenant who has failed to pay rent, or, as in this case, the apparent termination of the tenancy and a withdrawal of the property from the rental market.

[Ibid.]

“These examples are not intended to be exclusive but are illustrative of information that should be provided to a tax assessor whose records clearly reflect that a property has been used as income-producing property.” Ibid.
In reaching its decision the Appellate Division relied on the Supreme Court’s rationale in Ocean Pines, supra, in which the Court upheld the validity of Chapter 91’s appeal-preclusion provision, subject to a taxpayer’s right to request a sharply limited, and likely summary, review of the reasonableness of the assessor’s *364 valuation based upon the data available to the assessor when the valuation was made. There, the Court explained that Chapter 91 is intended “ ‘to assist the assessor in the first instance, to make the assessment and thereby ... to avoid unnecessary expense, time and effort in litigation’ ” that might arise where an assessor is compelled to formulate an assessment without the benefit of the economic data in the possession of the taxpayer regarding the income derived from the property. 112 N.J. at 7, 547 A.2d 691 (quoting Terrace View Gardens v. Township of Dover, 5 N.J.Tax 469, 474-75 (Tax 1982), aff'd o.b., 5 N.J.Tax 475 (App.Div.), certif. denied, 94 N.J. 559, 468 A.2d 205 (1983)).
Refusals on the part of the taxpayers to cooperate with the local property assessors cannot be tolerated by this court.... Here the taxpayer had an opportunity to supply the assessor information pertinent to the assessor’s work. It failed and refused to do so without any explanation, and its attitude in failing to even respond to the assessor’s legitimate statutory request is inexcusable.
[Id. at 8, 547 A.2d 091 (quoting Tenace View Gardens, supra, 5 N.J.Tax at 474-75).]
Applying these standards, the court in Conhagen, supra, held that the property owner “had a mandatory duty to respond to the tax assessor and a duty to demonstrate that its property ceased to be income-producing as of May 1994.” 16 N.J.Tax at 474. “Petitioner’s total failure to respond to the tax assessor is not acceptable.” Ibid.
The clear directive of the Appellate Division in Conhagen, supra, is not affected by the court’s recent opinion in H.J. Bailey, supra. In that case, the court held that Chapter 91’s appeal preclusion provision does not apply to non-income-producing property. The taxpayer owned land and improvements that were owner occupied and produced no rental income. H.J. Bailey, supra, 399 N.J.Super, at 384, 944 A.2d 706. There is no suggestion in the H.J. Bailey opinion that the property had previously produced income or that the assessor had categorized the property as income producing. In fact, the assessor submitted a certification stating that he could not make the threshold determination of whether the property was income producing merely by inspecting the property. Id. at 388, 944 A.2d 706. His request for income and expense information was intended to assist him both in *365 determining if the property was income producing and in formulating an assessment.
Although the assessor’s request stated that if the property was owner occupied, the taxpayer should so indicate on the enclosed form and return it to the assessor, the taxpayer did not respond to the information request. Id. at 384, 944 A.2d 706. The assessor subsequently assessed the property with the information available to him and an appeal followed. Ibid. In response to the municipality’s motion to dismiss pursuant to Chapter 91, the taxpayer certified that no response was made to the assessor’s information request because the property was owner occupied and produced no income. Ibid. This court denied the municipality’s motion to dismiss, following the holding in Monsanto Co. v. Town of Kearny, 8 N.J.Tax 109 (Tax 1986), that Chapter 91’s appeal-preclusion provision does not apply to property that is non-income-produeing. H.J. Bailey, supra, 399 N.J.Super, at 384-85, 944 A.2d 706. The Appellate Division affirmed.
The court began its analysis by noting that the Legislature required in Chapter 91 “ ‘[ejvery owner of real property’ ” to “ Tender a full and true account of his name and real property and the income therefrom, in the case of income-producing property. ...’” Id. at 386, 944 A.2d 706 (quoting N.J.S.A. 54:4-34) (emphasis deleted). Thus, the court concluded, the statute “clearly requires that property owners respond to Chapter 91 requests, irrespective of whether their property is income-producing or not.” Ibid. Yet, the court observed, “Ltjhe section of the statute referring to the sanction for not responding to the request for information ... refers only to owners of income-producing properties.” Ibid.
The court explained, “the statute’s appeal-preclusion clause, as tempered by the Court’s holding in Ocean Pines applies only to non-responding income-producing properties.” Id. at 388, 944 A.2d 706. As for non-income-producing properties, the court stated its holding succinctly: “Based on the clear language of the statute, we hold that Chapter 91’s appeal-preclusion provision and the limited appeal process fashioned by our Supreme Court in *366 Ocean Pines apply solely to income-producing properties.” Id. at 382-83, 944 A.2d 706. The court recognized the rationale for applying the appeal limitation to income-producing property: “ ‘If the economic data are to be of any use in the valuation process, they must be submitted in a timely fashion to the assessor, and not to a tribunal on a subsequent appeal.’ ” Id. at 387, 944 A.2d 706 (quoting Ocean Pines, supra, 112 N.J. at 7-8, 547 A.2d 691) (emphasis deleted). To have the assessor confronted with economic evidence of the value of the property for the first time on appeal would leave the assessor “ ‘unprepared to challenge or even evaluate the information provided by plaintiff.’ ” Ibid. Thus, the appeal limitation “ ‘encourage[s] compliance’ with a proper request for that information.” Id. at 388, 944 A.2d 706 (quoting Ocean Pines, supra, 112 N.J. at 7-8, 547 A.2d 691). The valuation of non-income-produeing property generally involves the use of sales of comparable properties or the cost of construction or other data not related to income, information that would not readily be in the possession of property owners and not the subject of a Chapter 91 request.
Plaintiffs’ contention that the holding in H.J. Bailey, supra, modifies the decision in Conhagen, supra, and counsels against dismissal of these matters is misplaced. Nothing in the Appellate Division’s text or reasoning in H.J. Bailey, supra, questions the continued validity of the holding in Conhagen, supra. To the contrary, the H.J. Bailey court expressly relied on the Conhagen decision. Near the end of its opinion the court “note[d] that a property owner, when failing to respond to a Chapter 91 request, runs the risk that the property will ultimately be found to be income-producing.” H.J. Bailey, supra, 399 N.J.Super, at 389, 944 A.2d 706 (footnote omitted). As evidence of this proposition, the H.J. Bailey court cited Conhagen noting its holding “that plaintiff was limited to Ocean Pines reasonableness hearing when plaintiffs property had formerly been income-producing, and plaintiff had failed to respond to a Chapter 91 request, notifying the assessor of the change in his property’s status.” Ibid. It is quite plain that the Appellate Division saw no conflict between its decision in H.J. Bailey, supra, which concerned property that had *367 never been used or characterized as income producing and the holding in Conhayen, supra, which addressed property previously used for income-producing purposes but which produced no income in the relevant year.
The facts of these cases call for application of the standard established in Conhayen, supra. In the years prior to 2006, the subject properties were income-producing apartment buildings. Their income-producing status was known to the assessor and reflected in her records. In 2007, tenants began to return to two of the buildings; by 2008 all were again producing rents. The gap in rent collection was occasioned not by a change in the use of the property or by owner occupancy, but because the living units had been vacated while a major renovation, presumably to enhance the future earning potential of the buildings, was undertaken. The court finds that plaintiffs never intended to abandon the income-producing nature of the properties and instead committed resources to enhancing the revenue generating potential of the properties.
Nor did the properties ever lose their character as income producing. “[Ijncome-producing property is generally limited to property producing rental income.” ML Plainsboro, Ltd. v. Township of Plainsboro, 16 N.J.Tax 250, 259 (App.Div.) (citation omitted), certif. denied, 149 N.J. 408, 694 A.2d 194 (1997). Temporary vacancies occasioned by renovations are akin to the “temporary loss of a tenant” and “the presence of a tenant who has failed to pay rent” noted by the court in Conhayen, supra, and do not deprive the properties of their income-producing nature. 16 N.J.Tax at 473. Both before the 2006 renovations and after the return of tenants beginning in 2007, the subject properties produced rental income. While the flow of rental payments may have been temporarily interrupted, the interruption was brought about by plaintiffs’ business decision to invest in the renovation of their income-producing properties.
Moreover, the court’s rationale in Conhayen, supra, is applicable here. The tax assessor, having previously recognized plaintiffs’ properties as income producing, and having received no *368 response to her information requests, was left to formulate assessments for the properties without valuable economic data concerning the properties’ operations. The assessor was unaware that the buildings were vacant and uninhabitable during 2006, a factor that surely would have been significant to her calculation of the assessments. “In New Jersey, the concept of true value has been expressed in terms of the price that could be obtained for the property in money at a fair sale between a willing buyer and a wiling seller.” Ford Motor Co. v. Township of Edison, 127 N.J. 290, 298-99, 604 A.2d 580 (1992) (citation omitted). In determining the price of multi-unit rental buildings both a willing seller and a willing buyer would consider significant the fact that the buildings were vacant and undergoing major renovations intended to enhance the buildings’ future utility as rental properties. See West Colonial Entrps., LLC v. City of East Orange, 20 N.J.Tax 576, 582-83 (Tax 2003)(recognizing need to determine long-term vacancy rate at multi-unit apartment building to calculate value using income method), aff'd, 21 N.J.Tax 590 (App.Div.2004). The assessor was denied this valuable information because of plaintiffs’ failure to respond to her Chapter 91 information requests. In light of these considerations, application of the Conhagen rule to these cases is appropriate. Defendant’s motions to dismiss pursuant to Chapter 91 are granted.
In Ocean Pines, sv,pra, our Supreme Court held that a taxpayer who does not comply with N.J.S.A. 54:4-34 may nevertheless seek review of the reasonableness of the assessor’s valuation based upon the data available to the assessor when the valuation was made. Such an inquiry would be limited to “(1) the reasonableness of the underlying data used by the assessor, and (2) the reasonableness of the methodology used by the assessor in arriving at the valuation.” 112 N.J. at 11, 547 A2d 691. The court, therefore, shall afford plaintiffs fourteen days in which to express an intention to seek reasonableness hearings. Should plaintiffs indicate an interest in pursuing reasonableness healings, the court will establish a schedule for limited discovery and hearing dates. Otherwise, judgments will be entered dismissing these matters.